UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                     Case No. 3:20-cr-628

                        Plaintiff,

        v.                                                    MEMORANDUM OPINION
                                                                  AND ORDER

Justin Pacelli,

                        Defendant.

## I.    INTRODUCTION

Defendant Justin Pacelli seeks to suppress evidence obtained during his arrest following a

traffic stop involving a vehicle in which he was riding.  (Doc. No. 7).  The government filed a brief

in opposition to the motion.  (Doc. No. 8).  I held an evidentiary hearing concerning Pacelli's

motion on July 21, 2021, during which the government presented evidence and testimony from

officers with the Toledo, Ohio Police Department, Officers Raul Jaso and Austin McCarthy.  For

the reasons stated below, I deny Pacelli's motion.

## II.    BACKGROUND

On March 2, 2020, Pacelli and another man were passengers in a vehicle driven by Amanda

Millhoan.  The vehicle was traveling eastbound on Western Avenue, before turning left onto

Broadway Avenue.  That section of Broadway is a four-lane road, with two lanes traveling in each

direction.  Officer Jaso testified he and Officer McCarthy conducted a traffic stop of the vehicle

after witnessing Millhoan cross the center line while she was driving on Western and then turn left

on Broadway into the right curb lane rather than the left lane, closest to the center line. The officers

maintained Millhoan's turn violated Ohio Revised Code § 4511.36(A) and that she also committed a

marked lanes violation in violation of Ohio Revised Code § 4511.33. Millhoan was issued a citation

for violating § 4511.36 as well as § 4511.33.[1]

The officers asked each of the three occupants for identification. Pacelli did not have an ID

card with him but provided Officer McCarthy with his name, date of birth, and social security

number. Jaso entered Pacelli's information into a mobile database terminal located in the police

cruiser and the database search indicated Pacelli had an active warrant issued by a court in Mansfield,

Ohio. Pacelli was placed under arrest. McCarthy then searched Pacelli pursuant to his arrest and

located a loaded firearm in Pacelli's pants.

Pacelli subsequently was charged by indictment with one count of illegally possessing a

firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (Doc. No. 1).

### III.    ANALYSIS

Pacelli argues the officers did not have probable cause to stop Millhoan because (1) the

video footage did not reveal a traffic violation and (2) Millhoan's turn did not violate § 4511.36.

(Doc. No. 7 at 8-9). Therefore, he contends, the officers violated his Fourth Amendment rights by

detaining and searching him and, as a result, all evidence obtained, and statements he made, must be

suppressed. (*Id.* at 9-10). I conclude, however, that the traffic stop did not violate Pacelli's Fourth

Amendment rights.

A traffic stop and the resulting detention of the occupants of the vehicle implicates an

individual's Fourth Amendment protections against unreasonable searches and seizures. *See, e.g.,*

*Delaware v. Prouse*, 440 U.S. 648, 653 (1979). These protections apply equally to any passengers in the

---

[1]    Millhoan was found guilty of both citations after entering a plea of no contest. *See*
https://tools.tmc-clerk.com/caseinformation/criminaltraffic/default.aspx, Case Nos. TRD-20-
03626-0102 and TRD-20-03626-0202.

vehicle, as well as the driver. *Brendlin v. California*, 551 U.S. 249, 251 (2007). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996) (citing *Prouse*, 440 U.S. at 659).

Millhoan turned left from Western Avenue, a two-way street, onto Broadway Avenue, another two-way street. Thus, the most appropriate subsection of § 4511.36 is § 4511.36(A)(2). That subsection states that, when a driver intends to turn

> [a]t any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

Ohio Rev. Code § 4511.36(A)(2).

What § 4511.36(A)(2) actually requires of drivers is a matter of some dispute among the Ohio appellate courts. As Pacelli points out, some appellate districts have held § 4511.36 does not mandate that drivers turn into the lane closest to the center line of the road. *See, e.g., State v. Kirkpatrick*, 97 N.E.3d 871, 874 (Ohio Ct. App. 2017) (1st Dist.) ("The plain language of R.C. 4511.36(A)(2) does not prohibit a driver from turning into the outside, right lane, instead of the inside, left lane."); *State v. Petty*, 134 N.E.3d 222, 230 (Ohio Ct. App. 2019) (4th Dist.) ("R.C. 4511.36(A)(2) is not ambiguous and does not prohibit a driver from turning into the far outside lane when making a left turn onto a roadway with two or more lanes.").

Other appellate districts, however, have concluded § 4511.36(A)(2) "requires drivers, whenever practicable, to pull into the left, inside lane when turning left from a two-way street onto another two-way street." *State v. Graham*, 17 N.E.2d 112, 116 (Ohio Ct. App. 2014) (9th Dist.). *See also State v. Connelly*, 2014-Ohio-2688, 2014 WL 2854187, at *4 (Ohio Ct. June 20, 2014) (6th Dist.)

(incorporating relevant sections of the Digest of Ohio Motor Vehicle Laws, which instructs drivers turning left onto a two-way street to make their turn "into the lane on the right half of the street nearest the center line") (quoting *Digest of Ohio Motor Vehicle Laws* at 37)); *State v. Egnor*, 2020-Ohio-327, 2020 WL 526006, at *4 (Ohio Ct. App. Feb. 3, 2020) (12th Dist.) (noting "apparent district split regarding violations of R.C. 4511.36(A) when making left-hand turns").

The relevant question, however, is not whether Millhoan's left turn actually violated § 4511.36(A)(2).  The Fourth Amendment requires that, at the time of the stop, "a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of law." *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010).  The Sixth District Court of Appeals, whose geographic scope includes Toledo, has held an officer has a permissible basis to initiate a traffic stop where the driver has made a left-hand turn into the right curb lane of a four-lane highway.  *Connelly*, 2014 WL 2854187 at *5.

Even those appellate courts which have held such turns are not prohibited have rejected defendants' motions to suppress on this basis after concluding the officer's belief that the driver "violated the statute is an objectively reasonable mistake of law . . . ." *Petty*, 134 N.E.3d at 230 (citing *Heien v. North Carolina*, 574 U.S. 54, 66 (2014)).  *See also Kirkpatrick*, 97 N.E.3d at 875 (holding "the police officer's belief that Kirkpatrick's wide left turn violated R.C. 4511.36 constitutes an objectively reasonable mistake of law in this case").

Pacelli takes issues with the fact that Jaso and McCarthy did not decide to cite Millhoan until after speaking with a detective and then discussed possible traffic citations before citing Millhoan for a marked lanes violation and an illegal left turn.  It is true, of course, "that police officers may not look for after-the-fact justifications for stops that would otherwise be impermissible." *Hughes*, 606 F.3d at 316.

4

But that prohibition does not accurately describe what occurred.  Jaso and McCarthy's testimony demonstrates the officers initiated the stop of Millhoan's vehicle because they observed her turn left into the far-right lane and believed that turn violated Ohio law.  Further, the recording from Jaso's body camera shows Jaso informed Millhoan why the officers stopped her before the officers discussed with a detective whether Millhoan should be cited.  (*See* Ex. 4, Jaso body camera at 00:03:47 – 00:03:55).

In view of the totality of the circumstances, the officers had probable cause to believe a civil traffic violation had occurred.  *United States v. Sanford*, 476 F.3d 391, 394-95 (6th Cir. 2007).  Because Officers Jaso and McCarthy had an appropriate basis for stopping Millhoan's vehicle, they also had a basis to detain Pacelli.  *Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997).  Further, once they determined Pacelli had an active warrant for his arrest, they were permitted to search him for weapons and contraband.  *Arizona v. Gant*, 556 U.S. 332, 339 (2009) ("[A] search incident to arrest may . . . include the arrestee's person and the area within his immediate control.") (citation and internal quotation marks omitted)).

Neither the stop of the vehicle nor the search of Pacelli's person violated Pacelli's Fourth Amendment rights.  Therefore, there is no basis to suppress the evidence obtained during and after the search.

## IV.    CONCLUSION

For the reasons set forth above, I deny Defendant Justin Pacelli's motion to suppress.  (Doc. No. 7).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge